## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**JEFFREY ECKRICH**
**BARBARA UTZ**
**LILIAN LONE**
**DALTON DECRISPINO**
**SEF MARTINEZ**
**JOHN JONES, III**
**WILLIAM PASKEY, III**
**ANDREW TURNER**

**PLAINTIFFS,**

**v.**

**Case No.: _____**

**STATE OF MARYLAND**
**TOWN OF RIDGELY, MARYLAND**
**DONALD BAKER, JR.**
**RODNEY HELMER**
**JOHN HURLEY**
**JOHN BUCKLE**
**ANTHONY CASEY**
**DAVID CRIST**
**STEPHANIE BERKEY**
**MELISSA LEONARD**
**JAMES JOLES**

**DEFENDANTS.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now into Court comes the plaintiffs: Jeffrey Eckrich, Barbara Utz, Lilian Lone, Dalton DeCrispinio, Sef Martinez, John Jones, III, Wiliam Paskey, III, and Andrew Turner and do hereby sue the defendants: the State of Maryland, the Town of Ridgely, Donald Baker, Jr., Rodney Helmer, John Hurley, John Buckle, Anthony Casey, David Crist,

Stephanie Berkey, Melissa Leonard, and James Joles and in support of the plaintiffs' causes of action allege as follows:

## INTRODUCTION

1.     In the small town of Ridgely, Maryland the local police department operated under the Town's Charter providing law enforcement services to the residents of the Town. As detailed herein, the Caroline County Sheriff, Donald Baker, Jr., orchestrated a coup to seize control of these operations, aiming to expand his office's jurisdiction by eliminating the local police department and absorbing law enforcement responsibilities into the Sheriff's Office, earning a lucrative contract with the Town valued in excess of $500,000 annually. This power grab involved conspiring with a discredited former police officer, several Town Commissioners, including John Hurley, John Buckle, and Anthony Casey, who wielded influence over municipal budgeting and departmental decisions, the Town's Director of Operations, and others to effectively stage an internal overthrow of the entire existing law enforcement structure.

## THE PARTIES

2.     Plaintiff Jeffrey Eckrich was at all relevant times the Chief of Police for the Town of Ridgely Police Department ("RPD").  Chief Eckrich's employment by the Town of Ridgely to perform the duties of Chief of Police was memorialized in a written employment contract effective January 1, 2021. **Exhibit 1.**

3.     Plaintiff Barbara Utz was at all relevant times a civilian employee of the RPD.

4.     Plaintiffs Lilian Lone, Dalton DeCrispino, Sef Martinez, John Jones, III, Wiliam Paskey, III, and Andrew Turner were at all relevant times police officers employed by the RPD.

5.     The Defendant, State of Maryland, is a sovereign state of the United States of America, organized under the Constitution of Maryland, with its principal administrative offices located in Annapolis, Maryland.

6.     Defendant Town of Ridgely is a body corporate, by the name of the Commissioners of Ridgely, with all the powers and privileges of a body politic and corporate, having all the rights incident to or that may attach to a municipal corporation.

7.     Defendant Donald Baker, Jr. was at all relevant times the Sheriff of Caroline County, Maryland.  Pursuant to Maryland State Government Article, § 12-101(a)(6) a sheriff or deputy sheriff of a county is within the definition of "State personnel" for purposes of the Maryland Tort Claims Act (Subtitle 1 of Title 12).  For purposes of the plaintiffs' federal claims under 42 U.S.C. § 1983, Donald Baker, Jr. is sued both in his personal and official capacity.

8.     Defendant Rodney Helmer was at all relevant times a Deputy Sheriff of Caroline County, Maryland.  Pursuant to Maryland State Government Article, § 12-101(a)(6) a sheriff or deputy sheriff of a county is within the definition of "State personnel" for purposes of the Maryland Tort Claims Act (Subtitle 1 of Title 12).  For purposes of the plaintiffs' federal claims under 42 U.S.C. § 1983, Rodney Helmer is sued both in his personal and official capacity.

9.     Defendants John Hurley, John Buckle, and Anthony Casey were at all relevant times Commissioners for the Town of Ridgely, Maryland.  For purposes of the plaintiffs' federal claims under 42 U.S.C. § 1983, John Hurley, John Buckle, and Anthony Casey are each sued both in their personal and official capacity.

10.     Defendant David Crist was at all relevant times the Director of Operations for the Town of Ridgely, Maryland. For purposes of the plaintiffs' federal claims under 42 U.S.C. § 1983, David Crist is sued both in his personal and official capacity.

11.     Defendant Stephanie Berkey was at all relevant times the Clerk-Treasurer for the Town of Ridgely, Maryland. For purposes of the plaintiffs' federal claims under 42 U.S.C. § 1983, Stephanie Berkey is sued both in her personal and official capacity.

12.     Defendant Melissa Leonard was at all relevant times the Treasurer for the Town of Ridgely, Maryland. For purposes of the plaintiffs' federal claims under 42 U.S.C. § 1983, Melissa Leonard is sued both in her personal and official capacity.

13.     Defendant James Joles was a police officer employed by the RPD until January 17, 2024, at which time he resigned in lieu of termination.

## JURISDICTION & VENUE

14.     This Court has subject matter jurisdiction over Plaintiff's federal constitutional claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

15.     This Court has supplemental jurisdiction over Plaintiff's state constitutional claims and common law claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391(b) because multiple Defendants reside in the district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

**STATEMENT OF FACTS**

17.     Defendant James Joles was hired as an officer by the Milford Police Department in Delaware on August 1, 2017.

18.     On October 12, 2018, after being accused of misconduct but prior to the hearing he requested before a Disciplinary Hearing Board, Joles was informed that he was fired due to poor performance and repeated lapses of judgment during his probationary period.

19.     Joles then sued the Milford Police Department, and the case was settled on April 15, 2020, and dismissed on March 10, 2021.

20.     Joles began searching for another job as a police officer in Delaware and on March 6, 2022, Joles applied for a position with the Delaware State University Police.

21.     In the process of conducting a background investigation, Joles was informed by a Delaware State University Police officer that the Delaware Department of Justice ("DOJ") had placed Joles on the Brady list.

22.     Joles sought a Writ of Mandamus from the Delaware Superior Court requesting that the court order the Delaware DOJ to remove him from the Brady List; however, the Superior Court action was dismissed without prejudice on June 7, 2022.

23. Joles then sued the Delaware DOJ in federal court on March 31, 2023 asserting claims against the Delaware DOJ pursuant to 42 U.S.C. § 1983 and related to his placement on the Brady list. *See Joles v. Delaware Dept. of Justice, et al.,* Case No. 1:23-cv-00221 (D.D.E. 2023).

24. Unable to find employment as a police officer in Delaware, Joles applied for a job at the RPD in February 2023. Joles did not disclose in his application or during his interview that he had been placed on a Brady list in Delaware and therefore was likely unqualified for the RPD law enforcement job.

25. Before hiring Joles, plaintiff Jeffrey Eckrich contacted Caroline County State's Attorney Sloan Franklin and asked Franklin to check to see if Joles was on any Brady list in Delaware. Franklin never responded to Eckrich but did inform plaintiff Lilian Lone that Joles was not on any Brady list and could be employed by the RPD.

26. Unaware that Joles was on a Brady list in Delaware, Eckrich hired Joles and he began working for the RPD in or about May 2023.

27. In early January 2024, the Commissioners of the Town of Ridgely without consulting Eckrich voted to terminate Joles' employment with the RPD and Joles resigned on January 17, 2024 in lieu of termination.

28. Joles then applied for a position in the Town of Greensboro Police Department in Caroline County, Maryland. It was discovered that Joles was on a Brady list in Delaware and the Greensboro Police Department declined to hire Joles.

29. The Greensboro Police Department's Chief of Police, Lenox S. Trams, received a text message from Joles that read:

"The town was already aware of the Brady stuff along with you. We discussed it in the interview. I'm hoping that you defended me to the town about Ridgely? If not I understand. I will tell you tho, I kind of feel like you have scrutinized every single thing in my life, which is fine, but definitely not a good feeling. I have told you things in confidence that I have not told anyone else and I have been up front about everything. Chief you and I both know this is not right what is happening to me. But if you don't wanna hire me or the town doesn't, I understand. But I'm going after Chief Eckrich and Ridgely. Your not going to destroy my life and just walk away from it."

30.     For unknown reasons, Joles blamed Eckrich for his pending termination and resignation.  True to his word that he was "going after Chief Eckrich and Ridgely," Joles contacted the defendant Sheriff Donald Baker, Jr.

31.     Sometime prior to February 23, 2024, Joles met with Baker and the two devised a plan that would eliminate the RPD and allow the Sheriff's Office to assume responsibility for law enforcement in the Town of Ridgely.

32.     As part of their plan, Joles made several false allegations against Chief Eckrich, including allegations that Eckrich knowingly withheld disclosing that Joles was on a Brady list in Delaware when hiring Joles, that Eckrich sold a town police care for less than market value without permission, that Eckrich had falsified firearms training records for Joles and another officer, that Eckrich had submitted false payroll records, that Eckrich had wrongfully sold firearms to officers, and that Eckrich was under the influence of medications while on duty and guilty of other mismanagement.

33.     In furtherance of their conspiracy, Baker reported these false allegations to Caroline County State's Attorney Sloan Franklin, who in turn referred the allegations to the Maryland Office of the State Prosecutor ("OSP").

34.     OSP initiated an investigation of Chief Eckrich on February 23, 2024 and the investigation was conducted by OSP Special Agent George R. Taylor, Jr.

35.     On the morning of March 11, 2024, defendant Baker and Sloan Franklin, Esq. met with Ridgely's Town Commissioners Hurley and Buckle in a closed meeting. Also present were defendants David Crist, Melissa Leonard, Stephanie Berkey, and Rodney Helmer.  Upon information and belief, Baker repeated the false allegations made by Joles and falsely informed the group that the entire RPD was then under investigation by OSP for criminal wrongdoing.

36.     Later that evening on March 11, 2024, another closed session was held with Ridgely's Town Commissioners Hurley and Buckle, Crist, Leonard, Berkey, Town Attorney Patrick Thomas, Sloan Franklin and James Joles attending.

37.     The next day, March 12, 2024, the Sheriff's Office applied for and obtained a search warrant to search the premises of the RPD building for evidence of theft, forgery of documents, and misconduct in office.  The warrant application did not disclose to the Court that the source of the information was James Joles, a former police officer who concealed his placement on a Delaware Brady list when he joined the RPD.  The search warrant application also failed to accurately describe the vehicle sold by Eckrich (it had been in an accident and had very high mileage) and misrepresented other facts material to a finding of probable cause.  The warrant was issued at 3:26 PM.

38.     Before the search warrant was obtained, defendants Baker, Helmer, Hurley, and Buckle arrived at the RPD and informed plaintiff Eckrich that "per the direction of the OSP's office, Eckrich and all employees at the RPD were to be suspended without pay

pending completion of the OSP's investigation."  When asked what was happening, defendant Hurley stated that "they," referring to Baker and Helmer, came in and informed him and Buckle that "per the OSP's office, everyone was to be suspended without pay but that the Commissioners agreed to suspend with pay."  Defendant Baker demanded that all RPD members turn in their firearms, badges, credentials and their certification cards from the Maryland Police and Correctional Training Commission.  Baker and Helmer collected these items from plaintiffs Eckrich, Lone, and DeCrispino and escorted them out of the building.  The remaining officers reported later that day to turn in their items.  None of the officers or employees of the RPD were given any explanation as to what they may have done to justify their immediate suspension.

39.    On March 13, 2024, Ridgely's Commissioners publicly announced that they had "suspended with pay the entirety of the Ridgely Police Department (the "Department"), effective immediately, pending investigation by the Office of the Maryland State Prosecutor."  The March 13, 2024 press release also informed the public that "[t]he Commissioners are currently developing a temporary agreement with the Caroline County Sheriff's Department to guarantee uninterrupted public safety services for the citizens of [the] Town of Ridgely (the "Town")" … "Updates will be made on the Town website as they become available."  **Exhibit 2**.

40.    News of the suspensions affecting the entire RPD spread quickly and questions regarding what was being investigated by the Office of the State Prosecutor were aired publicly on local and national news television broadcasts and in the written news media.

41. On March 20, 2024, the Commissioners of Ridgely entered into an Agreement For Law Enforcement Services with Sheriff Baker to commence on April 1, 2024. Defendants Hurley, Crist, Helmer and Baker all signed the Agreement. **Exhibit 3**.

42. On April 1, 2024, a Town Meeting was held to discuss, among other things, the Agreement with the Caroline County Sheriff's Office to provide law enforcement services in lieu of the suspended RPD. Portions of the meeting were recorded by the Annapolis Audit, an independent news organization. During the meeting, defendant Baker falsely states that "the Office of the State Prosecutor is the one investigating these incidents and these allegations, and I'm not even sure quite frankly the totality of the circumstances of what they're investigating" and "we are not investigating, the Office of the State Prosecutor is investigating, so what that whole circumstance is or why they are investigating I will not even speculate . . ." These statements were false because the Sheriff's Department had just two weeks earlier obtained and executed a search warrant alleging specific crimes for which the premises were expected to contain evidence and had been the driving force behind the suspensions without notice or any type of due process.

43. At the same meeting, defendant Hurley states that the Commissioners did not vote to suspend the entire RPD, "we were told by the State Prosecutor's Office the department was suspended, and all their officers were to come in and we were to take their badges, their LEOSA cards, and their weapons." This statement was false because it was defendant Baker, not anyone for the OSP, that instigated the suspension of the entire RPD.

44. On April 4, 2024, before any OSP or Sheriff's Office investigation was complete, defendant Baker sent an email to defendants Berkey, Crist, and Helmer with two

estimates attached for the costs to have "the Sheriff's Office [] assume the Ridgely Police Department." The attachments estimated total yearly costs even though the April 1, 2024 Agreement was represented to be "temporary" pending the OSP's investigation. **Exhibit 4**.

45. On April 10, 2024, before any OSP or Sheriff's Office investigation was complete, a closed meeting was held with the Town Commissioners. Defendants Hurley, Buckle, Casey, Crist, Berkey, and Leonard were present, together with the Town Attorney Patrick Thomas. Upon information and belief, the topic of discussion was the Sheriff's proposal to permanently replace the RPD with the Sheriff's Office.

46. On May 1, 2024, before any OSP or Sheriff's Office investigation was complete, all members of the RPD received termination letters, effective July 1, 2024. The sole reason for termination stated in the letters is that "the Town's law enforcement services are being provided by the Sheriff." **Exhibit 5**. Each letter is signed by defendant Hurley. Nowhere in the letters is there any explanation of what each employee was suspected of having done wrong nor any indication of the employee's right to a pretermination hearing.

47. Subsequent meeting minutes dated May 6, 2024 indicates that on April 10, the topics discussed were "[e]mployment status options of current Ridgely Police officers and support staff" and that it was decided that the entire RPD would be terminated effective July 1, 2024. A proposed Amendment to the April 1, 2024 Agreement was attached to the May 6, 2024 meeting minutes. **Exhibit 6.**

48. The meeting minutes for the May 6, 2024 Town Meeting records that defendant Sheriff Baker again falsely stated to those in attendance that "we were told by the State Prosecutor's Office to suspend." When a citizen asked who among the

Commissioners "gave the order to suspend," Casey replied he was not present, and Hurley and Buckle said they "could not recall." Later that day, May 6, 2024, a News Release was made by the Commissioners of Ridgely announcing the new agreement to have the Sheriff's Office permanently replace the RPD and again mentioned "the Commissioners of Ridgely took immediate action by suspending the Ridgely Police Department pending an investigation by the Office of the Maryland State Prosecutor." **Exhibit 7.**

49.     On June 3, 2024, the Ridgely Commissioners enacted the budget for the Town of Ridgely, allocating $541,590.00 for the Caroline County Sheriff's Office for fiscal year 2025 beginning July 1, 2024 and ending June 30, 2025.

50.     On July 25, 2024, the OSP completed its investigation and cleared Jeffrey Eckrich and the entire RPD of any wrongdoing, finding the allegations made by defendants to be unsubstantiated and unsupported by the evidence. No charges of any kind were made against any of the officers or employees of the RPD. At no point were any of the officers or employees of the RPD given notice of the allegations made against them and no one was afforded any opportunity to challenge the allegations prior to the OSP's July 25, 2024 Report.

51.     Significantly, the OSP's July 25, 2024 Report confirms that on March 12, 2024, "the Commissioners, *without guidance from OSP*, suspended all RPD officers." (emphasis added). **Exhibit 8** pg.3 ¶5.

52.     On September 9, 2024, the Town of Ridgely Commissioners issued a "Statement Regarding Ridgely Police Department." While the OSP's July 25, 2024 Report was made an attachment to the press release, the Commissioners stated that "reestablishing

the RPD would be a complex and expensive undertaking" and therefore the "Commissioners believe that it is in the best interest of the Town to continue the present arrangement with the Sheriff and the County through at least FY25 and to reevaluate the Sheriff's engagement when preparing the FY26 budget." **Exhibit 9.**

53.     Upon information and belief, the Sheriff continues to this day to provide law enforcement services to the Town of Ridgely, and there has been no effort to explore reinstatement of the RPD.

**COUNT I**
**Procedural Due Process (14th Amendment)**
**42 U.S.C. § 1983**

54.     Paragraphs 1 through 53 are incorporated herein as if restated verbatim.

55.     The 14th Amendment of the United States Constitution prohibits the government from depriving plaintiffs of their property without due process of law, meaning constitutionally adequate procedures.  The plaintiffs possess a property interest in their continued employment with the Ridgely Police Department because applicable state-law authorities provide they may be removed from their employment only for cause.

56.     Pursuant to Maryland Local Government Code § 5-206(d), a municipality such as the Town of Ridgely "may provide for the removal or temporary suspension from office of an appointed municipal officer for … misconduct in office" or similar cause, however, "[b]efore removing or suspending any officer, the municipality shall notify the officer and conduct a hearing."

57.     Additionally, all the plaintiffs were appointed to their public offices by the Commissioners of the Town of Ridgely pursuant to Sections 23 and 26 of the Town's Charter.

58.     Section 27 of the Town's Charter is an additional source of due process rights enjoyed by the plaintiffs, and provides:

> Upon complaint in writing, filed with the Commissioners of Ridgely, after notice to the party complained of informing him of what he is charged and to appear and defend himself first having been given him in writing at least five days before the time appointed for the hearing, and if the Commissioners in their discretion find any of the officers or employees of said town to be guilty of misconduct unbecoming an officer, willful disobedience, neglect of duty, misfeasance or malfeasance in office, such officer or employee may in the discretion of the Commissioners of Ridgely be removed at once from his office by a majority vote of the Commissioners of Ridgely, and his office shall be declared vacant, and the Commissioners of Ridgely shall as soon as convenient thereafter appoint another person to fill such office so vacated for the unexpired term, and immediately after such appointment the new employee shall qualify in the same manner as heretofore provided, and the new officer or employee shall have the same powers and duties as if he had been appointed in the first place, and serve out the term of the removed officer.

59.     All the plaintiffs were removed from their employment without ever receiving notice of what charges had been made against them and without any opportunity for a hearing to determine whether cause existed for their suspension and/or termination or otherwise to permit plaintiffs an opportunity to defend themselves.

60.     The defendants, under color of State law, each acted to cause the plaintiffs' suspension and/or termination of employment with the Town of Ridgely without procedural due process of law by: (1) never providing notice to plaintiffs of what misconduct they were being accused of; (2) failing to provide plaintiffs a hearing or other

opportunity to be heard or to defend themselves; (3) falsely asserting that the suspensions and terminations were at the direction of the Office of the State Prosecutor; and (4) acting to suspend and terminate plaintiffs' public employment.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

## COUNT II
### Substantive Due Process (14th Amendment)
### 42 U.S.C. § 1983

61. Paragraphs 1 through 60 are incorporated herein as if restated verbatim.

62. The 14th Amendment of the United States Constitution protects against governmental arbitrariness in the deprivation of life, liberty or property. For the reasons heretofore stated, the plaintiffs each possessed a property interest in their continued employment with the Town of Ridgely Police Department. Additionally, as set forth in Count III, the plaintiffs also possessed a protectable liberty interest in their reputation under the 14th Amendment.

63. The United States Supreme Court has explained that only the most egregious governmental action can be said to be "arbitrary" in the constitutional sense; the actionable level of governmental action that substantively violates the 14th Amendment is that which

shocks the conscience, *i.e.,* conduct that is at least deliberately indifferent to the rights of others or which intentionally deprives others of their rights.

64.   The defendants' actions in this case, taken under color of State law, were intended to overthrow and destroy the Town of Ridgely Police Department, and the means to accomplish this coup were intentional and outrageous, including falsely asserting various criminal violations to the Caroline County Circuit Court in sealed documents without probable cause to believe crimes had actually been committed; repeating these false claims to State's Attorney Sloan Franklin; claiming falsely and publicly that the suspension and termination of the plaintiffs was directed by the Office of the State Prosecutor, and acting to suspend and terminate the plaintiffs before any investigation was completed and without due process of law as set forth in Count I.

65.   The actions of Donald Baker, Jr., Rodney Helmer, John Hurley, John Buckle, David Crist, Stephanie Berkey, and James Joles (but not the remaining defendants) were motivated by hatred of the RPD and/or greed, and each of these defendants displayed actual malice towards the plaintiffs intending to harm the plaintiffs both in their property and reputation.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

## COUNT III
## Defamation Plus/Stigma Plus (14th Amendment Liberty Interest)
## 42 U.S.C. § 1983

66. Paragraphs 1 through 53 are incorporated herein as if restated verbatim.

67. The United States Supreme Court has acknowledged a constitutional liberty interest in one's reputation under the 14th Amendment. A plaintiff claiming a reputational injury must show (1) a statement stigmatizing his good name and damaging his standing in the community; (2) some type of dissemination or publication of the statement; and (3) some other government action that alters or extinguishes one of his or her legal rights.

68. On several occasions, including on May 6, 2024 and May 13, 2024, the defendants published new releases announcing that the plaintiffs had been "suspended" "pending an investigation by the Office of the Maryland Prosecutor." The OSP's website indicates they investigate "misconduct in office by public officials or employees" and other serious felony offenses. These public statements combined with their immediate suspension communicated that the plaintiffs were under investigation for misconduct in office, including serious criminal misconduct and therefore constitute defamation *per se* because falsely accusing the plaintiffs of committing crimes is defamatory on its face.

69. The defendants' statements were published on the Town's website and were amplified on local and national news television shows and in the print news media. Informing the public that plaintiffs were accused of misconduct in office, or other serious criminal misconduct sufficient to suspend their employment immediately caused severe harm to the plaintiffs' reputations and standing in the community.

70.  In addition to these defamatory statements, the plaintiffs lost their jobs purportedly as a direct result of the criminal investigation by the OSP, first through suspension and then through termination.

71.  The defendants' defamatory statements have permanently and irreparably harmed the reputations of the plaintiffs, who in the minds of the public committed misconduct so egregiously that the entire police department had to be immediately extinguished.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

## COUNT IV
### Civil Conspiracy
### 42 U.S.C. § 1983

72.  Paragraphs 1 through 71 are incorporated herein as if restated verbatim.

73.  To establish a civil conspiracy under 42 U.S.C. § 1983, plaintiffs must allege the defendants acted jointly in concert and that some overt act was committed in furtherance of the conspiracy which resulted in deprivation of plaintiffs' constitutional rights.

74.  The object of the conspiracy in which all defendants joined was to allege misconduct against the RPD sufficient to permit the Town's Commissioners and other executives a plausible reason to suspend and terminate the employment of the entire police department in Ridgely and to replace it with the Caroline County Sheriff's Office.

75.  In furtherance of the conspiracy the following overt acts were committed:

a.  James Joles met with Sheriff Baker and falsely accused Chief Jeffrey Eckrich and other members of the RPD of serious criminal misconduct;

b.  Sheriff Baker, without investigating Joles' false allegations, knowingly reported the unfounded allegations to Caroline County State's Attorney Sloan Franklin;

c.  On March 12, 2024 the Sheriff's Office applied for and obtain a search warrant for the search of the RPD's premises without disclosing material facts and information to the Court that likely would have resulted in the Court's denial of the warrant;

d.  On March 12, 2024 Sheriff Baker, Deputy Helmer, together with Commissioners Hurley and Buckle, visited the RPD and falsely informed Chief Eckrich and other officers that they were all suspended at the direction of the OSP and that they were all required to surrender their firearms, badges, police credentials and equipment to the Sheriff's Office;

e.  On March 20, 2024, defendants Hurley and Crist signed an Agreement with Sheriff Baker and Deputy Helmer to "temporarily" provide replacement police services for the Town of Ridgely starting April 1, 2024;

f.  On April 4, 2024, Sheriff Baker sent estimates by email to Berkey, Crist, and Helmer showing the approximate cost to have the Sheriff's Office provide replacement police services to the Town on a more permanent basis;

g.  On May 1, 2024, following a closed meeting in which the defendants discussed the plan to terminate the entire RPD, Hurley notified each plaintiff in writing

that they would be terminated effective July 1, 2024 even though their suspension was supposedly "temporary" pending the OSP investigation, which was not completed until after July 1, 2024.

h. Upon learning that the OSP investigation exonerated the entire RPD, Sheriff Baker sent a text message to David Crist stating the OSP Report didn't say "cleared or exonerated" and commented the Report "does not show him [Eckrich] in a good light." This evidence demonstrates that Baker and Crist were motivated to go after Eckrich and the RPD and were disappointed in the investigation's outcome.

76. As a result of the conspiracy and of the overt acts listed above, the object of the conspiracy was achieved and the plaintiffs were denied their constitutional rights, including their rights to have procedural and substantive due process and their liberty interest to be free from governmentally inflicted harm to their reputations in the community.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

**COUNT V**
**Procedural Due Process**
**Maryland Declaration of Rights, Article 24**

77.  Paragraphs 1 through 60 are incorporated herein as if restated verbatim.

78.  Article 24 of the Maryland Declaration of Rights states that, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

79.  Article 24 protects against deprivations of life, liberty, or property without due process of law and is interpreted *in pari materia*, meaning they are construed together as having a similar purpose and intent, but Maryland courts may still afford broader protections under Article 24 of the Maryland Declaration of Rights compared to the 14th Amendment's Due Process Clause, depending on the specific context and judicial interpretation.

80.  For all the reasons the plaintiffs were deprived of their property right to continued employment with the RPD as set forth in Count I, the defendants likewise violated the plaintiff's procedural due process rights under Article 24.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

**COUNT VI**
**Substantive Due Process**
**Maryland Declaration of Rights, Article 24**

81. Paragraphs 1 through 65 are incorporated herein as if restated verbatim.

82. Article 24 of the Maryland Declaration of Rights states that, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

83. Article 24 protects against deprivations of life, liberty, or property without due process of law and is interpreted *in pari materia*, meaning they are construed together as having a similar purpose and intent, but Maryland courts may still afford broader protections under Article 24 of the Maryland Declaration of Rights compared to the 14th Amendment's Due Process Clause, depending on the specific context and judicial interpretation.

84. For all the reasons the plaintiffs were deprived of their property right to continued employment with the RPD as set forth in Count II, the defendants likewise violated the plaintiff's substantive due process rights under Article 24.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

## COUNT VII
### Defamation Plus/Stigma Plus
### Maryland Declaration of Rights, Article 24

85.  Paragraphs 1 through 71 are incorporated herein as if restated verbatim.

86. Article 24 of the Maryland Declaration of Rights states that, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

87. Article 24 protects against deprivations of life, liberty, or property without due process of law and is interpreted *in pari materia*, meaning they are construed together as having a similar purpose and intent, but Maryland courts may still afford broader protections under Article 24 of the Maryland Declaration of Rights compared to the 14th Amendment's Due Process Clause, depending on the specific context and judicial interpretation.

88. For all the reasons the plaintiffs were deprived of their liberty interest to be free from governmentally inflicted damage to their reputation as set forth in Count III, the defendants likewise violated the plaintiff's rights under Article 24.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

## COUNT VIII
## Civil Conspiracy
## Common Law of Maryland

89. Paragraphs 1 through 76 are incorporated herein as if restated verbatim.

90. The defendants conspired and agreed together to harm the plaintiffs by eliminating and destroying the RPD, together with all its employees, and to cause the RPD's employees to be suspended and then terminated from their employment.

91. To accomplish this objective, the defendants committed the overt acts set forth in Count IV herein.

92. As a direct and proximate result of the defendants' conspiracy and acts in furtherance thereof, plaintiffs suffered substantial harm and damages, including but not limited to loss of employment, mental anguish, injury to reputation and standing in the community.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

## COUNT IX
## Defamation *Per Se*
## Maryland Common Law

93. Paragraphs 1 through 53 are incorporated herein as if restated verbatim.

94.  It is defamatory to "utter any slander or false tale of another . . . which may impair or hurt his trade or livelyhood." 3 W. Blackstone, *Commentaries on the Laws of England* 123 (special ed. 1983). Thus, a statement that adversely affects an employee's fitness for the proper conduct of his business or trade is actionable *per se* at common law.

95.  Statements in this case that the plaintiffs were under criminal investigation such that they needed to be immediately suspended from their duties and ultimately terminated indicated that, if true, the plaintiffs were unfit to work in a police department, and the statements impaired their ability to maintain their employment at the RPD.

96.  Defendants' false statements that the OSP had directed the plaintiffs' immediate suspension were knowingly made intentionally to harm the plaintiffs and demonstrate the defendants' actual malice towards the plaintiffs.  Because the OSP represents an authority on criminal prosecutions, saying that the OSP had directed the plaintiffs' suspensions added to the defamatory message that plaintiffs were guilty of serious criminal misconduct and unfit to continue working in the RPD.

97. Although the defendants' statements are defamatory *per se* and injury is presumed, the plaintiffs suffered substantial damages as a direct and proximate result of the false and defamatory statements, *i.e.,* they were suspended and then terminated from their employment, suffered harm to their reputation in their community, and lost their ability to work in a law enforcement position.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-

economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

**COUNT X**
**Tortuous Interference with Contractual Relations/**
**Prospective Economic Advantage**
**Maryland Common Law**
**(Defendants Joles, Baker, Helmer, Hurley, Buckle, and Casey)**

98.     Paragraphs 1 through 53 are incorporated herein as if restated verbatim.

99.     Defendants Joles, Baker, and Helmer all made knowingly false statements regarding the existence of criminal activity within the RPD and that OSP directed the suspension and termination of the plaintiffs from their employment with the RPD.

100.    Defendants made these statements with actual malice and intentionally to harm the plaintiffs and to interfere with their prospective economic advantage provided by their employment with the RPD.

101.     Defendants Hurley, Buckle, and Casey were willing to and did assist defendants Joles, Baker, and Helmer by first suspending and then terminating the plaintiffs and eliminating the RPD.

102.    The actions of Hurley, Buckle, and Casey were intentional and made with actual malice to hurt the plaintiffs and to interfere with their prospective economic advantage provided by their employment with the RPD.  The intentional nature of their actions is demonstrated by their disregard of the Town's Charter to act ultra vires in

elimination of the RPD, their willingness to do so without any semblance of due process, and before any investigation was even completed.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

## COUNT XI
### Wrongful Discharge
### Md. Local Gov't Code § 5-206(d) and Charter
### (Defendants Hurley, Buckle, and Casey)

103.    Paragraphs 1 through 53 are incorporated herein as if restated verbatim.

104.    Maryland Local Government Code § 5-206(d), together with Section 27 of the Town's Charter, provides plaintiffs with a right to continued employment with the Town of Ridgely subject to removal for cause and only after notice and a hearing.

105.    Defendants acted to violate these provisions without just cause and for no apparent reason other than a pending investigation of false allegations.

106.    The actions of the defendant Commissioners were ultra vires under the Town's Charter, unlawful under Maryland Local Government Code § 5-206(d), and in willful disregard of the plaintiffs' rights.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, for economic damages including but not limited to lost wages and benefits, non-

economic damages for harm to their reputations and mental anguish, punitive damages if permitted by law, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

### COUNT XII
### *Monell* Claims
### *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658 (1978)
### (Town of Ridgely)

107.    Paragraphs 1 through 53 are incorporated herein as if restated verbatim.

108.    A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that manifest deliberate indifference to the rights of citizens.

109.    In this case, the Commissioners of the Town of Ridgely are the policymakers for the Town, and their decisions and policies are, in effect, the decisions and policies of the Town of Ridgely, Maryland.

110.    The United States Supreme Court has made clear that municipal liability may be imposed for even a single decision by municipal policymakers under appropriate circumstances.

111.    In this case, the Commissioners first suspended and then terminated wrongfully the plaintiffs' employment, as set forth in this Complaint.

112.    The Town of Ridgely itself is liable to Plaintiffs because the official policy of the Town of Ridgely, as determined by the Town's Commissioners, deprived plaintiffs of their right to continued employment without due process of law and harmed the

plaintiffs' liberty to be free from governmentally imposed defamation intended to harm their reputation and justify their wrongful terminations.

WHEREFORE, plaintiffs demand judgment against the Town of Ridgely, Maryland for economic damages including but not limited to lost wages and benefits, non-economic damages for harm to their reputations and mental anguish, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and for all other relief to which the plaintiffs may be justly entitled.

### COUNT XIII
### Declaratory Judgment/Mandamus Relief
### Md. Courts & Jud. Proc. Code § 3-8B-01 *et seq.*

113.     Paragraphs 1 through 53 and 104 through 106 are incorporated herein as if restated verbatim.

114.     The defendants, and particularly the Commissioners of the Town of Ridgely, had a duty to obey the law and the limits placed upon them by the Charter of the Town of Ridgely.

115.     The Commissioners acted ultra vires to eliminate entirely the Town's police department and each time they contracted with the Caroline County Sheriff's Office to replace the police department.

WHEREFORE, plaintiffs seek declaratory and injunctive relief requiring the Town of Ridgely to reinstate its police department, to reinstate its officers and employees, and to nullify any current agreement between the Town of Ridgely and the Sheriff's Office related to the provision of law enforcement services in the Town of Ridgely.

## COMPLIANCE WITH STATUTORY NOTICE REQUIREMENTS

116.     The Local Government Tort Claims Act ("LGTCA") provides that a local government entity "shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Md. Courts & Jud. Proc. Code § 5-303(b).

117.     Generally, a local government's liability is limited under the LGTCA to a maximum of $400,000 per individual claim, and $800,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions. Md. Courts & Jud. Proc. Code § 5-303(a).  However, "[i]f the liability of a local government arises from intentional tortious acts or omissions or a violation of a constitutional right committed by a law enforcement officer," then the "combined award for both economic and noneconomic damages may not exceed a total of $890,000 for all claims arising out of the same incident or occurrence, regardless of the number of claimants or beneficiaries who share in the award."  Md. Courts & Jud. Proc. Code § 5-303(a)(3)(i).

118.     Subject to the aforesaid damage caps, "a local government may indemnify an employee for a judgment for punitive damages entered against the employee," however, the local government itself may not be liable for punitive damages. Md. Courts & Jud. Proc. Code § 5-303(c).

119.     The local government entity may not assert governmental or sovereign immunity to avoid its duty to defend or indemnify an employee. Md. Courts & Jud. Proc. Code § 5-303(b)(2).

120.     On November 11, 2024, plaintiffs provided notice of their claims alleged herein to the Town of Ridgely, Maryland pursuant to Md. Courts & Jud. Proc. Code § 5-304(b).  *See* **Exhibit 10.**

121.     The Maryland Tort Claims Act ("MTCA") provides for limited waiver of sovereign immunity up to the same damage caps as contained in the LGTCA. Md. State Gov't. Code § 12-104.

122.     On November 11, 2024, plaintiffs provided timely notice of the claims made herein to the Treasurer for the State of Maryland in accordance with Md. State Gov't. Code § 12-106(b).  *See* **Exhibit 11.**

### <u>DEMAND FOR JURY TRIAL</u>

123.     Plaintiffs respectfully demand trial by jury as to all counts subject to jury trial.

Respectfully Submitted,


/s/Ray M. Shepard_____
Ray M. Shepard, Bar No. 09473
The Shepard Law Firm, LLC
122 Riviera Drive
Pasadena, Maryland 21122
Phone: 410-255-0700
Facsimile: 443-773-1922
Email: Ray@Shepard.Law

*Attorney for plaintiffs.*